UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TRUSTEES OF THE LOCAL 7 TILE INDUSTRY
WELFARE FUND, TRUSTEES OF THE LOCAL 7
TILE INDUSTRY ANNUITY FUND, TRUSTEES OF
THE TILE LAYERS LOCAL UNION 52 PENSION
FUND, TRUSTEES OF THE BRICKLAYERS &
TROWEL TRADES INTERNATIONAL PENSION
FUND, AND TRUSTEES OF THE INTERNATIONAL
MASONRY INSTITUTE,

**REPORT &
RECOMMENDATION**
19-CV-1809-RPK-SJB

                         Plaintiffs,

        -against-

AM TILE SPECIALTY CONSTRUCTION,

                         Defendant.
-------------------------------------------------------------x

**BULSARA, United States Magistrate Judge:**

        Plaintiffs, Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile

Industry Annuity Fund, Tile Layers Local Union 52 Pension Fund, Bricklayers & Trowel

Trades International Pension Fund, and the International Masonry Institute (the

"Trustees"), commenced this action on March 29, 2019, against AM Tile Specialty

Construction ("AM Tile") pursuant to sections 502(a)(3) and 515 of the Employment

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3) & 1145, to

recover delinquent contributions allegedly owed to these funds, in addition to interest,

liquidated damages, audit fees, attorney's fees, and costs.  (Compl. dated Mar. 29, 2019,

Dkt. No. 1).  On November 27, 2019, the Clerk of Court entered a default against AM

Tile.  (Certificate of Default dated Nov. 27, 2019, Dkt. No. 14 ("Certificate of Default")).

On February 6, 2020, the Trustees filed a motion for default judgment.  (Mot. for

Default J. dated Feb. 6, 2020 ("Pls.' Mot."), Dkt. No. 15).  The Honorable Rachel P.

Kovner referred the motion to the undersigned on March 24, 2020, for a report and recommendation. (Order Referring Mot. dated Mar. 24, 2020).

For the reasons outlined below, the Court respectfully recommends that the motion for default judgment be granted in part, and interest, damages, attorney's fees, and costs be awarded as detailed herein.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (the "Local 7 Benefit Funds") and the Bricklayers & Trowel Trades International Pension Fund and International Masonry Institute (the "International Benefit Funds," and collectively with the Local 7 Benefit Funds, the "Funds") are multi-employer labor-management trust funds under section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), and employee benefit plans under section 3(3) of ERISA, 29 U.S.C. § 1002(3). (Compl. ¶¶ 4–5). The Local 7 Benefit Funds are administered from 45-34 Court Square, Long Island City, New York, and the International Benefit Funds are administered from 620 F Street, N.W., Washington, D.C. 20004. (*Id.*).

AM Tile is organized under the laws of New Jersey with its principal place of business located at 1 Thompson Drive, Leonardo, New Jersey. (*Id.* ¶ 6). AM Tile is an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5).

The Trustees allege that "[a]t all relevant times, AM Tile was a party to, or manifested an intention to be bound by, a collective bargaining agreement . . . with the Union." (*Id.* ¶ 8). With their motion for default judgment, the Trustees provided copies of two collective-bargaining agreements: one that covers the period June 8, 2009, to June 2, 2013 (Agreement Between the Greater New York and Jew Jersey Tile

Contractors Association, Inc., and the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers dated June 8, 2009 (the "2009–2013 CBA"), attached as Ex. 1 to the Suppl. Aff. of John M. Harras, Esq. in Supp. of M. for Default dated Aug. 19, 2020 (the "Harras Suppl. Aff."), Dkt. No. 24, art. XXX, § 1), and another that  covers the period June 3, 2013, to June 2, 2017 (Agreement Between the Greater New York and New Jersey Tile Contractors Association, Inc., and the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers dated June 3, 2013 (the "2013–2017 CBA"), attached as Ex. A to the Decl. of William Hill in Supp. of M. for Default J. (the "Hill Decl."), Dkt. No. 18, art. XXX, § 1).  AM Tile executed the 2009–2013 CBA.  (*See* Signature Page, attached as Ex. B to the Hill Decl., Dkt. No. 18, at 1; Harras Suppl. Aff. ¶ 8).  The Trustees do not allege that AM Tile signed the 2013–2017 CBA, or that it otherwise manifested an intent to be bound by the 2013–2017 CBA.  (*See, e.g*., Compl. ¶ 8 ("At relevant times, AM tile was a party to, or manifested an intention to be bound by, *a* collective bargaining agreement . . . with the Union." (emphasis added)); Hill Decl.; Harras Suppl. Aff.).  The Trustees provided a copy of the 2013–2017 CBA signed by Larsen Marble & Tile Inc, (2013–2017 CBA at 39), not AM Tile.

The 2009–2013 CBA provides that the agreement "shall automatically renew itself and continue in full force and effect from year to year" absent the timely receipt of written notice.  (2009–2013 CBA at 39).  Otherwise, the 2009–2013 CBA "shall continue from year to year thereafter until termination by either party."  (*Id*.).  To date, neither AM Tile nor the Union provided notice to terminate or modify the agreement.  (Hill Decl. ¶ 11; Harras Suppl. Aff. ¶ 11).

AM Tile agreed to make its records "available at all reasonable times for inspection, copying and audit by" the Trustees or other representatives of the Funds. (2009–2013 CBA art. IX, § 3(G); *see also id.* art. IX, § 3(K) ("It shall be a violation of this Agreement for any Employer to fail to furnish proper payroll records when requested for the purpose of completing an audit.")).

Pursuant to the 2009–2013 CBA, AM Tile recognized the Union as the exclusive collective-bargaining agent of "tile setters" and "tile finishers"[1] it employed in New Jersey and certain counties in New York. (2009–2013 CBA art. II). AM Tile also agreed to make fringe benefit contributions to "IPF, IMI, Tile Promotion, and Local Pension [Funds][2]. . . on the basis of hours worked" by those employees, (*id.* art. IX, § 3(C)), and make all other fringe benefit fund contributions on the basis of hours paid for, (*id.*). AM Tile was required to make these contributions at different, specific rates for tile setters and finishers, which are set out in attached rate schedules. (*See* Hill Decl. ¶ 9; Harras Suppl. Aff. ¶¶ 6–7; Wage Allocation for Collective Bargaining Agreement (the "Tile Finisher Rate Schedule"), attached as Ex. B to the Harras Suppl. Aff., Dkt. No. 24, at 1; Wage Allocation for Collective Bargaining Agreement (the "Tile Setter Rate Schedule"), attached as Ex. C to the Harras Suppl. Aff., Dkt. No. 24, at 1).

In the event of a breach of these payment obligations, AM Tile is liable for (1) delinquent contributions; (2) interest on the unpaid contributions from the date of delinquency until the date of payment, at a yearly interest rate of 10% for the Local 7

---

[1] "Tile setters" cut and install tiles, while "tile finishers" clean and prepare the tiles for setting and grout the finished tile work. (*See* 2009–2013 CBA art. III).

[2] None of these terms are defined in the 2009–2013 CBA. The Court infers that the parties are referring to contributions to the International Masonry Institute ("IMI") and to the Tile Layers Local Union 52 Pension Fund ("Local Pension").

Benefit Funds and a yearly interest rate of 15% for the International Benefit Funds; (3) liquidated damages of 20% of the unpaid contributions to the Local 7 Benefit Funds and the Bricklayers & Trowel Trades International Pension Fund;[3] (4) "reasonable audit and accounting expenses"; and (5) attorney's fees and costs.  (Joint Policy for Collection of Delinquent Fringe Benefit Contributions (the "Collection Policy"), attached as Ex. D to the Hill Decl., Dkt. No. 18).[4]

The Funds requested an audit of AM Tile's books and records for the period of January 1, 2012, through December 31, 2018.  (Compl. ¶ 17).  AM Tile refused to supply the Funds with access to its books and records, thereby preventing an audit.  (*Id.* ¶ 18; Decl. of Michael Sarosy in Supp. of Mot. for Default J. ("Sarosy Decl."), Dkt. No. 17, ¶ 5). On February 11, 2019, the Funds advised AM Tile that, if it failed to furnish its books and records within seven days, the Funds would conduct an estimated audit.  (Compl. ¶ 19; Sarosy Decl. ¶ 7).  AM Tile did not furnish its records; consequently, the Trustees conducted an estimated audit.  (Compl. ¶¶ 22–23; Sarosy Decl. ¶¶ 7–8).

On March 29, 2019, the Trustees commenced this action against AM Tile.  (*See* Compl.).  The Complaint alleges unpaid contributions in violation of section 515 of ERISA, 29 U.S.C. § 1145.  (*Id.* ¶¶ 1, 27–29).

On May 3, 2019, the Trustees informed the Court that AM Tile agreed to submit to an audit.  (*See* Mot. for Extension of Time to File Answer dated May 3, 2019, Dkt. No.

---

[3] "Liquidated damages are not owed to the International Masonry Institute." Sarosy Decl. ¶ 17 (Decl. of Michael Sarosy in Supp. of Mot. for Default J. dated Feb. 4, 2020 ("Sarosy Decl."), Dkt. No. 17, ¶ 17).

[4] AM Tile is bound to the Collection Policy pursuant to the 2009–2013 CBA. (2009–2013 CBA art. IX, § 3(Q) (whereby AM Tile "agree[d] to be bound . . . by all By-Laws, rules and resolutions adopted to regulate each of the Funds")).

8).  The Trustees' auditors revised the estimated audit on October 16, 2019.  (*See* First Mot. to Adjourn Conference dated July 18, 2019, Dkt. No. 11; Sarosy Decl. ¶¶ 11–12; Final Audit Report dated Oct. 16, 2019 ("Revised Audit"), attached as Ex. C to the Sarosy Decl., Dkt. No. 17).

AM Tile was served with a copy of the summons and Complaint on April 14, 2019, by delivery to Adam Blankenbaker, the President of AM Tile and an agent authorized to accept service.  (Proof of Service dated Apr. 16, 2019 ("Executed Summons"), Dkt. No. 6).  Blankenbaker filed an Answer to the Complaint on June 16, 2019, on behalf of AM Tile.  (*See* Answer dated June 6, 2019 ("Answer"), Dkt. No. 10).  This Court held an initial conference on September 6, 2019, which was adjourned because Blankenbaker, who is not a licensed attorney, appeared on behalf of AM Tile, a corporation.  (*See* Min. Order dated Sept. 6, 2019).  The Court ordered AM Tile to obtain counsel by October 25, 2019, and warned Blankenbaker that a default judgment could be issued against AM Tile if it failed to do so.  (*Id.*).  To date, counsel has not appeared on behalf of AM Tile.  Consequently, Plaintiffs sought a default against AM Tile, (Req. to Clerk for Entry of Default dated Nov. 22, 2019, Dkt. No. 13), which was entered by the Clerk of Court on November 27, 2019, (Certificate of Default).  On February 6, 2020, Plaintiffs moved for default judgment.  (Pls.' Mot.).  AM Tile was served with a copy of the motion for default judgment and accompanying papers at its last known business address.  (Aff. of Service ("Default J. Service"), Dkt. No. 20).

On August 12, 2020, the Court issued an Order to Show Cause, which directed the Trustees to file the collective-bargaining agreement and rate schedules that govern contributions made between January 1, 2012, and June 30, 2013.  (Order to Show Cause dated Aug. 12, 2020).  In response, the Trustees filed a letter attaching the 2009–2013

CBA and additional rate schedules. (Letter dated Aug. 13, 2020, Dkt. No. 22). After another order of the Court, (Order dated Aug. 18, 2018), the Trustees filed a supplemental affirmation attaching the same documents, (Harras Suppl. Aff.).

In accordance with the Revised Audit, the Trustees' motion seeks judgment against AM Tile in the amount of $450,390.33, which consists of (1) $199,515.88 in delinquent contributions; (2) $204,893.46 in interest on unpaid contributions plus accrued interest from October 16, 2019, through the entry of final judgment; (3) $4,390.40 in audit costs; (4) $35,122.69 in liquidated damages; (5) $7,214.38 in attorney's fees and costs; and (6) post-judgment interest at the statutory rate. (*See* Aff. of John M. Harras, Esq., in Supp. of Mot. for Default dated Feb. 6, 2020 ("Harras Aff."), Dkt. No. 16, ¶ 24).

For the reasons stated below, the motion should be granted in part and denied in part.

DISCUSSION

I.    <u>Entry of Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment

against that defendant.  *Id.* r. 55(b)(2).  The Clerk entered a default against AM Tile on November 27, 2019.  (Certificate of Default).

The next question, before reaching liability or damages, is whether AM Tile's conduct is sufficient to warrant entry of a default judgment. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."  *Id.*; *see also Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, AM Tile's default was willful.  "It is settled law that a corporation may not appear in a lawsuit against it except through an attorney," and "where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it."  *SEC v. Rsch. Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) (affirming entry of a default judgment against corporation which only appeared through its officers); *Premium Sports, Inc. v. Mendes*, No. 17-CV-1309, 2018 WL 2078488, at *5 (E.D.N.Y. Mar. 1, 2018) (concluding that corporate defendant defaulted because it "ha[d] not obtained counsel, and failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court *pro se*"), *report and recommendation adopted*, Order (Mar. 16, 2018).

AM Tile was served with the summons and Complaint.  (Executed Summons). When an AM Tile officer attempted to appear on its behalf at an initial conference, the Court informed him that corporations are not permitted to proceed *pro se* in federal

court and that "corporations who fail to obtain counsel may have a default judgment [entered] against them."  (Min. Order dated Sept. 6, 2019).  AM Tile did not obtain counsel despite ample notice and, thus, willfully defaulted.  AM Tile was subsequently served with the motion for default judgment and its supporting documents.  (Default J. Service; Certificate of Service dated Aug. 19, 2020, Dkt. No. 25).

As to the second factor, the Trustees would be prejudiced if the motion for default judgment were denied because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims adequately set forth in the Complaint." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation); *Trs. of the Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Coop., Pension & Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644, 2013 WL 4852312, at *7 (E.D.N.Y. Sept. 10, 2013) (adopting report and recommendation).

Third, the Court cannot conclude there is any meritorious defense to the allegations because AM Tile did not appear through counsel and thus no cognizable defense has been presented to the Court.  While Blankenbaker filed an Answer on behalf of AM Tile, (*see* Answer), because corporations cannot appear *pro se* in federal court, the Court cannot recognize this filing as a valid answer, *see, e.g.*, *Tweedy v. RCAM Title Loans, LLC*, 611 F. Supp. 2d 603, 605 & n.2 (W.D. Va. 2009) (explaining that, notwithstanding response submitted by corporation's registered agent, "the clerk did not acknowledge the response as an answer and properly entered [the corporate defendant]'s default"); *cf. Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180, 192 (2d Cir. 2006) (holding district court lacked jurisdiction to enter judgment based on a stipulation of settlement executed by a corporation proceeding *pro se*).

As a result, all three factors weigh in favor of default judgment.  The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.    <u>Liability</u>

In deciding a motion for default judgment, "a court is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688.1 (2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

The Trustees have established a violation of ERISA by AM Tile based on its failure to make contributions pursuant to the 2009-2013 CBA.  Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions."  29 U.S.C. § 1145; *see also Flanagan v. Marco Martelli Assocs., Inc.*, No. 13-CV-6023, 2015 WL 1042279, at *8 (E.D.N.Y. March 9, 2015) (noting that, under

section 515, "employers are required to pay fringe benefit contributions pursuant to an effective CBA"). The Trustees of a plan may, pursuant to section 502, bring an action to enforce this requirement. *See* 29 U.S.C. § 1132(a)(3); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313–14 (2d Cir. 1990). Thus, to establish a violation of section 515, the Trustees must show that AM Tile (1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions. *See, e.g.*, *Health & Welfare Fund of the United Food & Com. Workers Loc. 2013 v. Precision Abstract,* LLC, No. 16-CV-4690, 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017), *report and recommendation adopted*, 2017 WL 4296740 (Sept. 26, 2017).

As to the first element, AM Tile is alleged to be an employer within the meaning of section 3(5) of ERISA, (Compl. ¶ 6), and the Funds are plans as defined by ERISA, (*id.* ¶¶ 4–5).

As to whether AM Tile is bound by a CBA, the Union and AM Tile entered into the 2009–2013 CBA on January 12, 2012. (*E.g.*, Harras Suppl. Aff. ¶ 8). Pursuant to this CBA, AM Tile agreed to make contributions to the Funds, (Compl. ¶ 9; 2009–2013 CBA art IX, § 3), and the agreement renewed annually unless it was terminated or modified in writing, (2009–2013 CBA at 39), which was never done, (Hill Decl. ¶ 11; Harras Suppl. Aff. ¶ 11). Thus, the 2009–2013 CBA bound AM Tile during the entire time period from January 1, 2012, to December 31, 2018.

The Trustees, however, have not established that AM Tile is bound by the 2013–2017 CBA. A party may be bound by a written collective-bargaining agreement it did not sign if its "conduct manifested an intent to adopt" the unsigned agreement. *Brown v. C. Volante Corp.*, 194 F.3d 351, 355–56 (2d Cir. 1999); *Operating Eng'rs Loc. 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 650 (7th Cir. 2001)

("Acceptance . . . can be manifested by conduct as well as by words." (citing *Brown*)).
Among other indicia, a party manifests such intent through "the payment of union
wages, the remission of union dues, the payment of fringe benefit contributions, the
existence of other agreements evidencing assent, . . . the submission of the employer to
union jurisdiction, such as submitting to an audit by the union or to grievance
procedures," *Panek v. Cimato Bros. Constr., Inc.*, No. 02-CV-333, 2007 WL 3033948, at
*2 (W.D.N.Y. Oct. 15, 2007), cooperation with an audit, or similar conduct, *Brown*, 194
F.3d at 354–55 ("The sixty-one remittance reports—most of which were expressly
submitted '[i]n accordance with the terms of' the CBAs—appellant's cooperation with
the audit, its payment of union wages to employees, and Volante's letter to the Trustees
acknowledging appellant's 'responsibility to the funds,' are sufficient, absent contrary
evidence, to establish as a matter of law appellant's intent to adopt the two unsigned
CBAs." (alteration in original)).

AM Tile did sign an earlier collective-bargaining agreement, the 2009–2013 CBA.
(*See* Signature Page, attached as Ex. B to the Hill Decl., Dkt. No. 18, at 1).  But there are
no other facts alleged from which to infer that AM Tile intended to be bound by the
2013–2017 CBA.  The Trustees have not alleged that AM Tile paid wages, remitted dues,
or made benefit contributions pursuant to the 2013–2017 CBA, or that AM Tile
participated in any grievance procedures in accordance with the 2013–2017 CBA; it has
offered no remittance reports based on this CBA.  The act of cooperating with an audit—
which could be deemed an act to comply with the 2009-2013 CBA—and signing an
earlier CBA are insufficient to tie AM Tile to the 2013-2017 CBA.  *See, e.g.*, *AGL Indus.,
Inc. v. Iron Workers Loc. 40*, No. 14-CV-03618, 2014 WL 7338925, at *2 (E.D.N.Y. Dec.
22, 2014) ("Respondents assert that AGL manifested an intent to be bound by their CBA

through its submission of benefit contributions and remittance reports over a six month period.  This fact—in light of AGL's other conduct—is insufficient to establish an intent to be bound by Respondents' CBA.  AGL never requested laborers from Locals 40, 360 and 417. AGL also employed seven non-union laborers on the Project.  These employees were paid different wages than the two Local 361 employees and AGL did not make contributions on their behalf." (footnote omitted)); *Panek*, 2007 WL 3033948, at *2 (finding that "submission of benefit payments and remittance reports . . . , absent any other factors . . . did not manifest an intent to be bound" by an unsigned collective-bargaining agreement); *Brown v. Dominic Prisco Transp., Inc.*, No. 95-CV-1121, 1997 WL 1093463, at *7–8 (E.D.N.Y. Aug. 16, 1997) (declining to find that an employer was bound by a successor collective-bargaining agreement although it had signed prior agreement).  And even though AM Tile has defaulted, the absence of any specific factual allegations in the Complaint tying it to the 2013–2017 CBA make it impossible for the Court to conclude it was bound by this agreement.

As for the failure to make contributions, the Trustees allege AM Tile failed to make required fringe benefit contributions during the period of January 1, 2012, through December 31, 2018, as demonstrated by the Revised Audit.  (Compl. ¶ 33; Revised Audit).  These allegations, on default, are generally sufficient to establish ERISA liability.  *See, e.g.*, *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3–4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (recommending that the employer's failure to make contributions to employee-benefit funds pursuant to a collective-bargaining agreement "constitutes a violation of ERISA"),

13

*report and recommendation adopted*, 2011 WL 5402898 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (adopting report and recommendation) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA . . . . Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.").

However, the Trustees fail to establish AM Tile's liability for two categories of amounts set out in the Revised Audit: (1) contributions to certain funds and committees that the Trustees do not represent or are not authorized to act on behalf of; and (2) contributions based on work performed by subcontractors and independent contractors.

*First*, Trustees seek to recover contributions owed to the Vacation, Supplemental, Building, Defense, and Promotion Funds (the "non-Plaintiff Funds"); contributions owed to the Bricklayers and Allied Craftworkers Political Action Committee and the Local PAC (the "PACs"); and union dues. (*E.g.*, Revised Audit at 2 (itemizing delinquent contributions)). The Trustees have not alleged that any of the non-Plaintiff Funds or PACs is an employee benefit plan under section 3(3) of ERISA, (*see* Compl.), which precludes recovery under section 515 of ERISA, 29 U.S.C. § 1145. And union dues are not recoverable under ERISA. *See Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 281–82 (E.D.N.Y. 2009) (adopting report and recommendation) (noting that an employer's failure to pay union assessments constitutes a breach of the collective-bargaining agreement but does not constitute a violation of ERISA).

Separately, the Trustees may not pursue the lack of contributions to the non-Plaintiff Funds, PACs, or the Union because the 2009-2013 CBA does not empower

them to do so.  *E.g.*, *Trs. of the Loc. 7 Tile Indus. Welfare Fund v. EAQ Constr. Corp.*, No. 14-CV-4097, 2015 WL 5793597, at *9 (E.D.N.Y. Sept. 30, 2015) (adopting report and recommendation); *Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Alp Stone, Inc.*, No. 12-CV-5974, 2015 WL 4094615, at *4 (E.D.N.Y. June 17, 2015), *report and recommendation adopted*, 2015 WL 4112449 (July 7, 2015).

As to the Supplemental, Building, and Defense Funds, they are not the subject of the CBA (nor are they the subject of any allegation in the Complaint).  While the CBA addresses the Promotion Fund, (2009–2013 CBA art. XXV), the Complaint does not allege that the Trustees were designated to act on behalf of the Promotion Fund.  And with respect to the Vacation Fund, the CBA provides that contributions are deducted from employee wages and remitted directly to the Vacation Fund, not to the Trustees, the Union, or any entity that the Trustees are entitled to act on behalf of.  (*Id.* art. XXVI, § 8).  And there is no allegation in the Complaint that AM Tile did not make the requisite deductions and remit them directly to the Vacation Fund.  A similar problem affects contributions to the PACs and dues check-offs.  Under the 2009–2013 CBA, AM Tile was required to deduct certain amounts, based on signed voluntary employee authorization forms provided by the Union, from employee pay and remit them to the PACs "in care of the Union."  (*Id.* art. XXII).  AM Tile was also required to withhold and remit dues check-offs to the Union.  (*Id.* art. IX, § 4).

To collect on behalf of these entities, the Trustees needed to establish "an assignment of ownership" of their claims.  *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Tr. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) ("[U]nder federal common law, the *assignees* of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA." (emphasis added)); *e.g.*, *Bd. of Trs. of the*

*United Union of Roofers Loc. Union No. 8 W.B.P.L.A. Funds v. Best Roofing of N.J., Inc.*, No. 12-CV-1655, 2014 WL 1311809, at *5 (E.D.N.Y. Mar. 31, 2014) (adopting report and recommendation) ("[U]nder the CBA, union dues must be paid to the union-not to the Funds, and plaintiffs do not provide any basis for collecting dues on behalf of the union.  Accordingly, plaintiffs lack the standing to collect unpaid union dues." (citation omitted)); *Trs. of Loc. 7 Tile Welfare Fund v. Bennick Contracting, Inc.*, No. 07-CV-4992, 2010 WL 1424011, at *4 (E.D.N.Y. Jan. 22, 2010) ("To the extent the Trustees seek any relief relating to 'dues check-offs,' the court should deny their request."), *report and recommendation adopted as modified*, 2010 WL 1437928 (Apr. 9, 2010).  The Trustees have not, however, alleged that they are authorized to collect delinquent contributions on behalf of the non-Plaintiff Funds, PACs, or the Union.  (*See* Compl.). Where a CBA or other agreement does not enable a plaintiff to recover the failure to make particular fund contributions, there is no ERISA recovery, even on default, and even if the audit report suggests that contributions were not made.  *Trs. of Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. RPT N.Y. L.L.C.*, No. 12-CV-3875, 2013 WL 5460292, at *5 (E.D.N.Y. Sept. 13, 2013) (adopting report and recommendation) ("There has been no evidence submitted that any of the non-plaintiff Funds or the Union designated one of the plaintiff Funds as their collection agents. . . . Since plaintiffs have not established that they have standing to bring claims for unpaid contributions on behalf of the Promotional Fund, the Building Fund, the Defense Fund, the Local PAC, the BAC/PAC or the Union, I recommend denying damages for unpaid contributions and dues to those entities."); *Flynn v. Anthony Mion & Son, Inc.*, 112 F. App'x 101, 102 (2d Cir. 2004) (vacating ERISA judgment in favor of a benefit fund which

"lack[ed] standing to bring suit in its own name where the alleged injury was" to other funds).

*Second*, the Trustees allege AM Tile failed to remit contributions for subcontractor and independent contractor work and they are entitled to recover those delinquent contributions.  (Sarosy Decl. ¶¶ 25, 27, 29, 31).  The 2009–2013 CBA forbids AM Tile from employing subcontractors who are not party to the CBA and exempts AM Tile from the obligation to make contributions on behalf of subcontractors who sign the CBA.  (2009–2013 CBA art. XVI ("No Employer . . . shall subcontract . . . to any other person, firm, corporate or entity who is not a signatory to or bound by this Agreement . . . .  The employer shall not be responsible for payment of fringe benefits of a signatory subcontractor.")).  The Revised Audit includes spreadsheets that detail work performed by independent contractors and subcontractors, separate from the spreadsheets that detail work performed by employees.  (*Compare* Sarosy Decl. ¶ 19, *with id.* ¶ 25).  The Trustees are not eligible to recover these amounts.

For one thing, the spreadsheets itemizing work performed by independent contractors and subcontractors do not distinguish between the two or identify whether the subcontractors signed the CBA, and because the Trustees cannot recover contributions for certain subcontractor work, (*see* 2009–2013 CBA art. XVI), the audit's lack of clarity is fatal to recovery.  *See, e.g., Trs. of the Loc. 7 Tile Indus. Welfare Fund v. EAQ Constr. Corp.*, No. 14-CV-4097, 2016 WL 4540306, at *10 (E.D.N.Y. Aug. 12, 2016) (recommending that, where sections of the audit were unclear on what work was performed by subcontractors, that no contributions be awarded on their basis), *report and recommendation adopted*, 2016 WL 4536866, at *1 (Aug. 30, 2016); *Caesar Max Constr.*, 2019 WL 1130727, at *8–9 (same).  For another, employers are not liable for

unpaid contributions based on work performed by subcontractors unless the collective-bargaining agreement provides as such. *EAQ Constr. Corp.*, 2016 WL 4540306, at *9 ("Under ERISA, an employer may be liable for contributions to various fringe benefit funds on behalf of work performed by employees of subcontractors with which the employer contracts *if* the governing collective bargaining agreement demands such contributions from the employer." (emphasis added) (collecting cases)). And here, the CBA provides that AM Tile cannot employ subcontractors who are not signatories to the agreement and is *not* liable for contributions based on work performed by subcontractors who signed the CBA. (2009–2013 CBA art. XVI). There is no provision of the CBA identified by Trustees that enables them to recover for nonsignatory subcontractors. As such, AM Tile cannot be held liable for work performed by subcontractors. *See, e.g.*, *EAQ Constr. Corp.*, 2016 WL 4540306, at *9.

Thus, this Court finds that AM Tile is liable under ERISA for unpaid fringe benefit contributions to the Funds owed on behalf of work performed by employees, but not liable for amounts owed to the non-Plaintiff Funds, the PACs, or the Union, or for contributions calculated on the basis of work performed by subcontractors or independent contractors.

III.    Damages, Unpaid Contributions, and Other Recovery

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v.*

18

*Interstate Motor Carrier, Inc.*, No. 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty."  *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default."  *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases).

Plaintiffs who establish an employer's liability under section 515 of ERISA are entitled to an award of "1) the amount of unpaid contributions; 2) interest on the unpaid contributions; 3) liquidated damages; 4) reasonable attorney's fees and costs, and 5) such other legal and equitable relief as the court deems appropriate."  *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 257 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)).  The Court addresses each in turn.

A.    Delinquent Contributions

Plaintiffs seek $199,515.88 in delinquent ERISA contributions.  (*See* Harras Aff. ¶¶ 8, 24).  In support of these figures, Plaintiffs submitted an audit for the period of January 1, 2012, through December 31, 2018 and an affidavit from Michael Sarosy, a payroll auditor employed by the Trustees.  (*See* Revised Audit; Sarosy Decl. ¶¶ 2–3).  Sarosy explained how the audit was conducted, namely by reviewing payroll tax forms and differentiating between work performed by tile setters and tile finishers, who are paid different hourly wages and thus have different contribution rates.  (Sarosy Decl.

¶¶ 10–18). The total hours were then multiplied by the applicable rates, which resulted in the amounts due. (*Id.* ¶¶ 20, 22, 24, 26, 28, 30, 32).

Various portions of the total amount sought by the Trustees are unrecoverable, and the Court is not required to award the amounts contained in an audit report. *E.g.*, *Caesar Max Constr., Inc.*, 2019 WL 1130727, at *8 & n.6 (noting that the Trustees "fail to correctly calculate and adequately support the damages they seek" and "not[ing] that this is not the first time [the Trustees] have filed inadequate papers in support of a motion for default judgment").

First, as discussed above, the Trustees have not established that AM Tile is liable for unpaid contributions to the non-Plaintiff Funds, the PACs, for dues' check-offs, or based upon work performed by subcontractors or independent contractors. The Court respectfully recommends these amounts, which total $309,740.08, not be awarded.

Second, the Revised Audit relies on rate schedules promulgated under both the 2009–2013 CBA and 2013–2017 CBA. (Harras Suppl. Aff. ¶ 18). To the extent the Revised Audit relies on rate schedules connected with the 2013–2017 CBA, because the Trustees have not offered sufficient evidence that AM Tile was ever bound by that agreement, such amounts should not be awarded.

After excluding these categories of work, the Court conducted independent calculations to determine hours worked or paid for. These calculations are set out in Tables 1 and 2 below.

| Table 1:  Tile Setters | | | |
|---|---|---|---|
| **Employee** | **Applicable Rate Schedule** | **Unreported Hours Paid For** | **Unreported Hours Worked** |
| Plaginos, Gustav W. | 6/4/2012 to 12/2/2012 | 28 | 28 |
| Arthur, Daniel | 12/3/2012 to 6/1/2013 | 40 | 40 |
| Arthur, Daniel | 12/3/2012 to 6/1/2013 | 53.5 | 51.5 |
| Arthur, Thomas | 12/3/2012 to 6/1/2013 | 101.5 | 97.5 |
| Christie, Frank | 12/3/2012 to 6/1/2013 | 48 | 48 |
| Clacher, Corey J. | 12/3/2012 to 6/1/2013 | 277 | 265 |
| Harrington, Mark | 12/3/2012 to 6/1/2013 | 529.25 | 482 |
| Krucon, Robert | 12/3/2012 to 6/1/2013 | 291.5 | 273.5 |
| Mauro, Vincent J. | 12/3/2012 to 6/1/2013 | 26 | 20 |
| Miccio, Matthew L. | 12/3/2012 to 6/1/2013 | 31 | 31 |
| Plaginos, Gustav W. | 12/3/2012 to 6/1/2013 | 420.5 | 395 |
| Proniewski, Christopher M. | 12/3/2012 to 6/1/2013 | 42 | 42 |
| Repaci, William A. | 12/3/2012 to 6/1/2013 | 84 | 80 |
| Ruggerio, Joseph | 12/3/2012 to 6/1/2013 | 65 | 65 |
| Zazo, John A. | 12/3/2012 to 6/1/2013 | 32.25 | 32.25 |
| Healy, Daniel J | 12/3/2012 to 6/1/2013 | 172 | 170.5 |
| Rieu, George D | 12/3/2012 to 6/1/2013 | 135.5 | 112 |
|  |  | **2377.00** | **2233.25** |

| Table 2:  Tile Finishers | | | |
|---|---|---|---|
| **Employee** | **Applicable Rate Schedule** | **Unreported Hours Paid For** | **Unreported Hours Worked** |
| Kestner, Lyn | 6/4/2012 to 12/2/2012 | 1.5 | 1.5 |
| Ellison, Lionel A. | 12/3/2012 to 6/3/2013 | 70 | 70 |
| Gilberti, Joseph | 12/3/2012 to 6/3/2013 | 58 | 58 |
| Kellington, Robert | 12/3/2012 to 6/3/2013 | 216 | 212 |
| Letts, Robert J. | 12/3/2012 to 6/3/2013 | 109.88 | 100.5 |
| Lott, Michael D. | 12/3/2012 to 6/3/2013 | 473.75 | 483.75 |
| Price, John | 12/3/2012 to 6/3/2013 | 40 | 40 |
| Tumminello, Frank | 12/3/2012 to 6/3/2013 | 178 | 174 |
| Butth, Patrice D. | 12/3/2012 to 6/3/2013 | 173.75 | 173.75 |
| Graham, Christopher J. | 12/3/2012 to 6/3/2013 | 41.5 | 41.5 |
| Klevit, Jack J. | 12/3/2012 to 6/3/2013 | 4 | 4 |
| Matesic, Martin S. | 12/3/2012 to 6/3/2013 | 20 | 16 |
| | | **1386.38** | **1375.00** |

Based on these calculations, the Court next multiplied these hours with the rates set out in the Tile Setters Rate Schedule and Tile Finishers Rate Schedule, as set forth below in Tables 3 and 4.  Based on these independent calculations, this Court instead respectfully recommends that $98,118.11 be awarded to the Trustees for unpaid contributions.

| Employee | Applicable Rate Schedule | Local Pension | Annuity | Welfare | International Pension | International Surcharge | International Masonry Institute |
|---|---|---|---|---|---|---|---|
| *Table 3: Delinquent Contributions on Behalf of Tile Setter Work* | | | | | | | |
| Plaginos, Gustav W. | 6/4/2012 to 12/2/2012 | $105.00 | $210.00 | $315.00 | $77.00 | $11.48 | $18.76 |
| Arthur, Daniel | 12/3/2012 to 6/1/2013 | $150.00 | $310.00 | $460.00 | $110.00 | $16.40 | $32.00 |
| Arthur, Daniel | 12/3/2012 to 6/1/2013 | $193.13 | $414.63 | $615.25 | $147.13 | $21.94 | $41.20 |
| Arthur, Thomas | 12/3/2012 to 6/1/2013 | $365.63 | $786.63 | $1,167.25 | $279.13 | $41.62 | $78.00 |
| Christie, Frank | 12/3/2012 to 6/1/2013 | $180.00 | $372.00 | $552.00 | $132.00 | $19.68 | $38.40 |
| Clacher, Corey J. | 12/3/2012 to 6/1/2013 | $993.75 | $2,146.75 | $3,185.50 | $761.75 | $113.57 | $212.00 |
| Harrington, Mark | 12/3/2012 to 6/1/2013 | $1,807.50 | $4,101.69 | $6,086.38 | $1,455.44 | $216.99 | $385.60 |
| Krucon, Robert | 12/3/2012 to 6/1/2013 | $1,025.63 | $2,259.13 | $3,352.25 | $801.63 | $119.52 | $218.80 |
| Mauro, Vincent J. | 12/3/2012 to 6/1/2013 | $75.00 | $201.50 | $299.00 | $71.50 | $10.66 | $16.00 |
| Miccio, Matthew L. | 12/3/2012 to 6/1/2013 | $116.25 | $240.25 | $356.50 | $85.25 | $12.71 | $24.80 |
| Plaginos, Gustav W. | 12/3/2012 to 6/1/2013 | $1,481.25 | $3,258.88 | $4,835.75 | $1,156.38 | $172.41 | $316.00 |
| Proniewski, Christopher M. | 12/3/2012 to 6/1/2013 | $157.50 | $325.50 | $483.00 | $115.50 | $17.22 | $33.60 |
| Repaci, William A. | 12/3/2012 to 6/1/2013 | $300.00 | $651.00 | $966.00 | $231.00 | $34.44 | $64.00 |
| Ruggerio, Joseph | 12/3/2012 to 6/1/2013 | $243.75 | $503.75 | $747.50 | $178.75 | $26.65 | $52.00 |
| Zazo, John A. | 12/3/2012 to 6/1/2013 | $120.94 | $249.94 | $370.88 | $88.69 | $13.22 | $25.80 |
| Healy, Daniel J | 12/3/2012 to 6/1/2013 | $639.38 | $1,333.00 | $1,978.00 | $473.00 | $70.52 | $136.40 |
| Rieu, George D | 12/3/2012 to 6/1/2013 | $420.00 | $1,050.13 | $1,558.25 | $372.63 | $55.56 | $89.60 |
| **TOTAL** | | | | | | | **$63,412.22** |

| Employee | Applicable Rate Schedule | Local Pension | Annuity | Welfare | International Pension | International Surcharge | International Masonry Institute |
|---|---|---|---|---|---|---|---|
| Table 4:  Delinquent Contributions on Behalf of Tile Finisher Work | | | | | | | |
| Kestner, Lyn | 6/4/2012 to 12/02/2012 | $5.63 | $9.00 | $16.88 | $4.13 | $0.62 | $0.90 |
| Ellison, Lionel A. | 12/3/2012 to 6/3/2013 | $262.50 | $420.00 | $805.00 | $192.50 | $28.70 | $46.20 |
| Gilberti, Joseph | 12/3/2012 to 6/3/2013 | $217.50 | $348.00 | $667.00 | $159.50 | $23.78 | $38.28 |
| Kellington, Robert | 12/3/2012 to 6/3/2013 | $795.00 | $1,296.00 | $2,484.00 | $594.00 | $88.56 | $139.92 |
| Letts, Robert J. | 12/3/2012 to 6/3/2013 | $376.88 | $659.28 | $1,263.62 | $302.17 | $45.05 | $66.33 |
| Lott, Michael D. | 12/3/2012 to 6/3/2013 | $1,814.06 | $2,842.50 | $5,448.13 | $1,302.81 | $194.24 | $319.28 |
| Price, John | 12/3/2012 to 6/3/2013 | $150.00 | $240.00 | $460.00 | $110.00 | $16.40 | $26.40 |
| Tumminello, Frank | 12/3/2012 to 6/3/2013 | $652.50 | $1,068.00 | $2,047.00 | $489.50 | $72.98 | $114.84 |
| Butth, Patrice D. | 12/3/2012 to 6/3/2013 | $651.56 | $1,042.50 | $1,998.13 | $477.81 | $71.24 | $114.68 |
| Graham, Christopher J. | 12/3/2012 to 6/3/2013 | $155.63 | $249.00 | $477.25 | $114.13 | $17.02 | $27.39 |
| Klevit, Jack J. | 12/3/2012 to 6/3/2013 | $15.00 | $24.00 | $46.00 | $11.00 | $1.64 | $2.64 |
| Matesic, Martin S. | 12/3/2012 to 6/3/2013 | $60.00 | $120.00 | $230.00 | $55.00 | $8.20 | $10.56 |
| **TOTAL** | | | | | | | **$34,705.90** |

B.    Liquidated Damages

Plaintiffs seek liquidated damages on the delinquent contributions owed to the Local 7 Benefit Funds and the Bricklayers & Trowel Trades International Pension Fund at a rate of 20%.  (Sarosy Decl. ¶¶ 12, 17).  "Liquidated damages are not owed to the International Masonry Institute."  (*Id.* ¶ 17).

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." *Sullivan*, 2011 WL 5401987, at *6 (citing 29 U.S.C. § 1132(g)(2)(C)); *see also Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 (Mar. 12, 2019).  The Collection Policy provides for liquidated damages equal to 20% of unpaid "Contributions."  (Collection Policy art. II, ¶ 5).  Thus, the Trustees are entitled to an award of liquidated damages equal to 20% of AM Tile's delinquent contributions to the Local 7 Benefit Funds and the Bricklayers & Trowel Trades International Pension Fund, which amount to $95,341.49.  *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc.*, No. 11-CV-5742, 2013 WL 2120338, at *6 (E.D.N.Y. Apr. 3, 2013), *report and recommendation adopted*, 2013 WL 2120318 (May 15, 2013).  This Court has independently calculated the delinquent contributions to these funds and recommends $19,085.55 in liquidated damages, as set forth below in Tables 5 and 6.

| Employee | Applicable Rate Schedule | Local Pension | Annuity | Welfare | International Pension | International Surcharge | Total Contributions | Liquidated Damages |
|---|---|---|---|---|---|---|---|---|
|  | Table 5: Tile Setters Liquidated Damages |
| Plaginos, Gustav W. | 6/4/2012 to 12/2/2012 | $105.00 | $210.00 | $315.00 | $77.00 | $11.48 | $718.48 | $143.70 |
| Arthur, Daniel | 12/3/2012 to 6/1/2013 | $150.00 | $310.00 | $460.00 | $110.00 | $16.40 | $1,046.40 | $209.28 |
| Arthur, Daniel | 12/3/2012 to 6/1/2013 | $193.13 | $414.63 | $615.25 | $147.13 | $21.94 | $1,392.06 | $278.41 |
| Arthur, Thomas | 12/3/2012 to 6/1/2013 | $365.63 | $786.63 | $1,167.25 | $279.13 | $41.62 | $2,640.24 | $528.05 |
| Christie, Frank | 12/3/2012 to 6/1/2013 | $180.00 | $372.00 | $552.00 | $132.00 | $19.68 | $1,255.68 | $251.14 |
| Clacher, Corey J. | 12/3/2012 to 6/1/2013 | $993.75 | $2,146.75 | $3,185.50 | $761.75 | $113.57 | $7,201.32 | $1,440.26 |
| Harrington, Mark | 12/3/2012 to 6/1/2013 | $1,807.50 | $4,101.69 | $6,086.38 | $1,455.44 | $216.99 | $13,667.99 | $2,733.60 |
| Krucon, Robert | 12/3/2012 to 6/1/2013 | $1,025.63 | $2,259.13 | $3,352.25 | $801.63 | $119.52 | $7,558.14 | $1,511.63 |
| Mauro, Vincent J. | 12/3/2012 to 6/1/2013 | $75.00 | $201.50 | $299.00 | $71.50 | $10.66 | $657.66 | $131.53 |
| Miccio, Matthew L. | 12/3/2012 to 6/1/2013 | $116.25 | $240.25 | $356.50 | $85.25 | $12.71 | $810.96 | $162.19 |
| Plaginos, Gustav W. | 12/3/2012 to 6/1/2013 | $1,481.25 | $3,258.88 | $4,835.75 | $1,156.38 | $172.41 | $10,904.66 | $2,180.93 |
| Proniewski, Christopher M. | 12/3/2012 to 6/1/2013 | $157.50 | $325.50 | $483.00 | $115.50 | $17.22 | $1,098.72 | $219.74 |
| Repaci, William A. | 12/3/2012 to 6/1/2013 | $300.00 | $651.00 | $966.00 | $231.00 | $34.44 | $2,182.44 | $436.49 |
| Ruggerio, Joseph | 12/3/2012 to 6/1/2013 | $243.75 | $503.75 | $747.50 | $178.75 | $26.65 | $1,700.40 | $340.08 |
| Zazo, John A. | 12/3/2012 to 6/1/2013 | $120.94 | $249.94 | $370.88 | $88.69 | $13.22 | $843.66 | $168.73 |
| Healy, Daniel J | 12/3/2012 to 6/1/2013 | $639.38 | $1,333.00 | $1,978.00 | $473.00 | $70.52 | $4,493.90 | $898.78 |
| Rieu, George D | 12/3/2012 to 6/1/2013 | $420.00 | $1,050.13 | $1,558.25 | $372.63 | $55.56 | $3,456.56 | $691.31 |
| **TOTAL** | | | | | | | | **$12,325.85** |

| Table 6:  Tile Finishers Liquidated Damages | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Employee** | **Applicable Rate Schedule** | **Local Pension** | **Annuity** | **Welfare** | **International Pension** | **International Surcharge** | **Total Contributions** | **Liquidated Damages** |
| Kestner, Lyn | 6/4/2012 to 12/02/2012 | $5.63 | $9.00 | $16.88 | $4.13 | $0.62 | $36.24 | $7.25 |
| Ellison, Lionel A. | 12/3/2012 to 6/3/2013 | $262.50 | $420.00 | $805.00 | $192.50 | $28.70 | $1,708.70 | $341.74 |
| Gilberti, Joseph | 12/3/2012 to 6/3/2013 | $217.50 | $348.00 | $667.00 | $159.50 | $23.78 | $1,415.78 | $283.16 |
| Kellington, Robert | 12/3/2012 to 6/3/2013 | $795.00 | $1,296.00 | $2,484.00 | $594.00 | $88.56 | $5,257.56 | $1,051.51 |
| Letts, Robert J. | 12/3/2012 to 6/3/2013 | $376.88 | $659.28 | $1,263.62 | $302.17 | $45.05 | $2,647.00 | $529.40 |
| Lott, Michael D. | 12/3/2012 to 6/3/2013 | $1,814.06 | $2,842.50 | $5,448.13 | $1,302.81 | $194.24 | $11,601.74 | $2,320.35 |
| Price, John | 12/3/2012 to 6/3/2013 | $150.00 | $240.00 | $460.00 | $110.00 | $16.40 | $976.40 | $195.28 |
| Tumminello, Frank | 12/3/2012 to 6/3/2013 | $652.50 | $1,068.00 | $2,047.00 | $489.50 | $72.98 | $4,329.98 | $866.00 |
| Butth, Patrice D. | 12/3/2012 to 6/3/2013 | $651.56 | $1,042.50 | $1,998.13 | $477.81 | $71.24 | $4,241.24 | $848.25 |
| Graham, Christopher J. | 12/3/2012 to 6/3/2013 | $155.63 | $249.00 | $477.25 | $114.13 | $17.02 | $1,013.02 | $202.60 |
| Klevit, Jack J. | 12/3/2012 to 6/3/2013 | $15.00 | $24.00 | $46.00 | $11.00 | $1.64 | $97.64 | $19.53 |
| Matesic, Martin S. | 12/3/2012 to 6/3/2013 | $60.00 | $120.00 | $230.00 | $55.00 | $8.20 | $473.20 | $94.64 |
| **TOTAL** | | | | | | | | **$6,759.70** |

C.    Prejudgment Interest on Unpaid Contributions

The Trustees seek an award of $450,390.33 in prejudgment interest on AM Tile's unpaid contributions, which was calculated using an interest rate of 10% for Local 7 Benefit Funds and 15% for the International Benefit Funds, compounded annually. (Sarosy Decl. ¶¶ 12–13).  For the reasons stated below, the Court recommends that $28.88 in prejudgment interest per day, beginning on June 30, 2016, through the date of entry of final judgment, should be awarded.

The 2009–2013 CBA provides that interest shall accrue "at the rate of ten percent (10%) per annum (calculated from the due date) for local funds and fifteen percent (15%) per annum for international funds (calculated from the day after the due date)." (2009–2013 CBA art. IX, § 3(L)).  The Collection Policy similarly states that "[e]mployers shall be liable for the payment of delinquent Contributions with interest at the rate of ten percent (10%) per annum (calculated from the Due Date) for local funds and fifteen percent (15%) per annum for international funds (Calculated from the Due Date)."  (Collection Policy art. II, ¶ 5).

The Trustees are not entitled to compound interest.  "Courts in this District regularly decline to award compounded interest in the absence of a plan document providing for compounding." *Trs. of the Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 U.S. Dist. LEXIS 25506, at *25–26 (E.D.N.Y. Feb. 12, 2020), *report and recommendation adopted*, Order (Mar. 23, 2020).  Neither the

2009–2013 CBA nor the Collection Policy provide for compound interest.  (2009–2013 CBA art. IX, § 3(L); Collection Policy art. II, ¶ 5).[5]

AM Tile is liable for $98,118.11 in delinquent ERISA contributions, which consists of $83,535.46 owed to the Local 7 Benefit Funds and $14,582.65 owed to the International Benefit Funds.  To find the total interest owed to the Funds, the Court multiplies the daily interest (10% of the unpaid Local 7 Benefit Funds contributions and 15% of the unpaid International Benefit Funds, each divided by 365 days per year) by the number of days the contributions were delinquent.

In determining the date on which interest begins to accrue, New York law[6] permits interest to be computed 'from a single reasonable intermediate date' when damages occurred at various times." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Coastal Envtl. Grp. Inc.*, No. 18-CV-5791, 2019 WL 5693916, at *8 (E.D.N.Y. Aug. 30, 2019) (quoting N.Y. C.P.L.R. § 5001(b)), *report and recommendation adopted*,

---

[5] The Trustees have attempted to collect compound interest based on this agreement before other Courts in this District; in each case, simple interest was recommended and awarded.  *E.g.*, *All Flooring Sols., LLC*, 2020 U.S. Dist. LEXIS 25506, at *25–26; *Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Caesar Max Constr., Inc.*, No. 18-CV-1339, 2019 U.S. Dist. LEXIS 23594, at *25–26, *25 n.9 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 39571 (Mar. 12, 2019); *Trs. of the Loc. Tile 7 Indus. Welfare Fund v. Gibraltar Constr., Inc.*, No. 18-CV-3042, 2018 U.S. Dist. LEXIS 215226, at *13 n.4 (E.D.N.Y. Dec. 20, 2018), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 166371 (Sept. 26, 2019); *Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC*, No. 18-CV-1025, 2018 U.S. Dist. LEXIS 198022, at *10 (E.D.N.Y. Nov. 19, 2018), *report and recommendation adopted in part*, 2018 U.S. Dist. LEXIS 205546 (Dec. 5, 2018).

[6] *See Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Manhattan Plumbing Corp.*, No. 08-CV-3036, 2009 WL 5821676, at *5 n.4 (E.D.N.Y. Oct. 8, 2009) (noting that "federal courts frequently apply [New York law] in calculating interest in ERISA cases"), *report and recommendation adopted as modified*, 2010 WL 456870 (Feb. 3, 2010).

Order (Mar. 31, 2020). "[S]ection 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). This Court concludes that June 30, 2016, is the midpoint in the period of sought unpaid contributions, and the reasonable date to begin calculating prejudgment interest. *See, e.g.*, *Coastal Envtl. Grp.*, 2019 WL 5693916, at *8 (collecting cases).[7]

Thus, this Court recommends that simple prejudgment interest be granted at a rate of $22.89 per day on the Local 7 Benefit Funds and $5.99 per day on the International Benefit Funds, together $28.88, beginning on June 30, 2016, through the date of entry of final judgment.

D.    Audit Fees

"Although 29 U.S.C. § 1132(g)(2) does not expressly provide for an award of audit fees," courts have granted audit fees when the collective-bargaining agreement provides for their recovery or they "have used section 1132(g)(2)(E), which provides 'for such other legal or equitable relief as the court deems appropriate,' as a basis for awarding audit fees." *Lanzafame v. L & M Larjo Co.*, No. 03-CV-3640, 2006 WL 2795348, at *8 (E.D.N.Y. Sept. 26, 2006) (adopting report and recommendation). This result is

---

[7] The Trustees do not explain the date on which interest should accrue. (*See* Sarosy Decl. ¶ 13 (stating that interest is "calculated from the due date"); *see also* Hill Decl. ¶ 17)). Pursuant to the 2009–2013 CBA, interest begins to accrue on delinquent Fund contributions on the date contributions are due, which is either the 1st or 15th of the month. (2009–2013 CBA art. IX, § 3(L)). Interest is calculated from the due date for delinquent contributions to the Local 7 Benefit Funds and from the day after the due date for delinquent contributions to the International Benefit Funds. (*Id.*). Pursuant to the Collection Policy, however, interest is calculated from the due date for both the Local 7 Benefit Funds and the International Benefit Funds. (Collection Policy art. II, ¶ 5). The Trustees submissions do not illuminate this ambiguity or otherwise explain how interest was calculated. As such, the Court has adopted the intermediate date approach.

appropriate when agreements between the parties provide for an award of audit fees. *See id.* In the Collection Policy, AM Tile agreed to pay "reasonable audit . . . expenses" in connection with any collection action by the Trustees. (Collection Policy art. II, ¶ 5).

Plaintiffs seek $4,390.40 in audit fees, which reflects 68 hours of work performed at a rate of $80 per hour. (Sarosy Decl. ¶¶ 12, 34, 36). The Court finds this total to be reasonable in light of other audit fee awards in other ERISA default judgment cases in this District, *see, e.g.*, *Gesualdi v. MBM Indus., Inc.*, No. 10-CV-2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (awarding $4,260 in audit fees); *Martone v. HST Roofing, Inc.*, No. 03-CV-4165, 2007 WL 595054, at *4 (E.D.N.Y. Feb. 22, 2007) (awarding $4,940 in audit fees).

E.    Attorney's Fees

Plaintiffs seek $6,736.00 in attorney's fees for a total of 31.3 hours of work on the case. (Harras Aff. ¶ 20). Pursuant to section 502 of ERISA, where an action is brought by a fiduciary to enforce section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Additionally, the Collection Policy provides that an employer who fails to make timely payments of contributions "shall be liable for the payment of . . . attorneys' fees." (Collection Policy art. II, ¶ 5; *see also* Hill Decl. ¶ 17).

In assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay. See *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. *Id.* The next step is to determine the

reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770 (Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary." *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

As for the reasonableness of the proposed hourly rate, courts examine the experience and qualifications of counsel seeking the fee award.  The Trustees were represented by the law firm of Virginia & Ambinder, LLP ("V&A").  (Compl. at 1; *see also* Harras Aff.).  Counsel submitted contemporaneous billing records documenting the legal services rendered by V&A for work performed, including the date of service, the amount of time during which services were provided, the name of the attorney, and a description of services performed.  (*See* Invoice of Professional Services, attached as Ex. D to Harras Aff., Dkt. No. 16).  One attorney, John M. Harras, and legal assistants, who were not named in the billing records or supporting documentation, performed legal work on behalf of the Trustees.  (*Id.*).  Mr. Harras is a 2015 graduate of St. John's University School of Law, and he has prosecuted numerous ERISA collection actions. (Harras Aff. ¶ 17).  Mr. Harras was promoted from an associate at V&A to partner in January 2020.  (*Id.*).

The Trustees seek an award at a rate of $265 per hour for the work performed by Mr. Harras as an associate from January 1, 2019, through December 31, 2019, and $350 per hour for Mr. Harras's work as partner following his promotion from January 1, 2020

32

through the present.  (*Id*. ¶ 17).  Additionally, Plaintiffs seek an award at a rate of $115 per hour for the work performed by V&A's legal assistants.  (*Id*. ¶ 18).

In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour, *e.g.*, *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, No. 17-CV-5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018); rates ranging from "$200 to $300 for senior associates, [and] $100 to $200 for junior associates, *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Sav. Plan v. Temperini Mech. Inc.*, No. 18-CV-2596, 2020 WL 571680, at *4 (E.D.N.Y. Jan. 13, 2020), *report and recommendation adopted*, 2020 WL 565410, at *2 (Feb. 5, 2020); and rates ranging from $70 to $90 per hour for paralegals and legal assistants, *id.*  However, "courts have 'accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range.'"  *Coastal Envtl. Grp. Inc.*, 2019 WL 5693916, at *10 (quoting *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *6 (E.D.N.Y. July 31, 2015), *report and recommendation*, 2015 WL 5330388 (Sept. 11, 2015)).

In light of the fact that this is a default judgment, and that the Court is recommending that various portions of the damages sought not be awarded, the Court respectfully recommends that Mr. Harras's partner rate be reduced to $300 per hour and his associate rate be reduced to $225 per hour.  The requested rate of $350 is unreasonably high for a relatively new partner in an ERISA default judgment action. *See, e.g.*, *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship & Lab. Mgmt. Coop. Funds v. Excel Installations, LLC*, 19-CV-3012, 2020 WL 429135, at *5

(E.D.N.Y. Jan. 27, 2020) (adopting report and recommendation) (ruling that a rate of $300 per hour is reasonable for a different V&A partner in an ERISA default judgment case); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Shorecon-NY, Inc.*, No. 17-CV-5210, 2020 WL 3962127, at *4–5 (S.D.N.Y. July 13, 2020) (rejecting a V&A associate's request for a rate of $350 per hour upon her promotion to partner on January 1, 2020, and instead awarding an hourly rate of $300 per hour).  Thus, the Court recommends Mr. Harras's partner rate be reduced to $300 per hour.

The requested associate rate of $265 is also unreasonably high.  Courts have recently awarded attorney's fees for Mr. Harras's work at a rate of $225 per hour for his work as an associate on ERISA matters.  *See, e.g.*, *Trs. of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc.*, No. 18-CV-1471, 2020 WL 1172635, at *11 (E.D.N.Y. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 1166616 (Mar. 11, 2020); *All Flooring Sols., LLC*, 2020 U.S. Dist. LEXIS 25506, at *37 (reducing the hourly rate from $265); *Finkel v. Potenza Elec. Corp.*, No. 19-CV-486, 2019 WL 7580103, at *4 (E.D.N.Y. Nov. 26, 2019) (reducing the hourly rate from $275), *report and recommendation adopted*, 2020 WL 207707 (Jan. 14, 2020).  Thus, the Court recommends Mr. Harras's associate rate be reduced to $225 per hour.

The requested rate for V&A's legal assistants, $115, is also unreasonably high. *See, e.g.*, *Potenza Elec. Corp.*, 2019 WL 7580103, at *4 (recommending a reduction in rate for work performed by V&A legal assistants to $90 per hour from $120 per hour).

The Court recommends that the rate for V&A's legal assistants be reduced to $90 an hour.

Turning next to the reasonableness of the time expended, according to the billing records submitted, the Trustees' attorney and legal assistants spent 18.7 hours and 12.6 hours on the case, respectively. (*See* Invoice of Professional Services). The work performed included preparing and filing pleadings in this action, corresponding with the auditors and reviewing the audit, negotiations with AM Tile, attending court conferences, and preparing the instant motion. (*Id.*). The number of hours billed is within the range of what this District has approved in ERISA default judgments. *See, e.g.*, *Gesualdi v. Tapia Trucking LLC*, No. 11-CV-4174, 2012 WL 7658194, at *5 (E.D.N.Y. Oct. 15, 2012), *report and recommendation adopted*, 2013 WL 831134 (Mar. 6, 2013) (approving 32.4 hours of work); *Ferrara v. Metro D Excavation & Found., Inc.*, No. 10-CV-4215, 2011 WL 3610896, at *7 (E.D.N.Y. July 7, 2011), *report and recommendation adopted*, 2011 WL 3625448 (Aug. 16, 2011) (approving 32.1 hours).

Therefore, based on the hourly rate and the number of hours billed on this matter set forth above, the Court respectfully recommends that the Plaintiffs be awarded $5,634.00 in attorney's fees, as outlined in the chart below.

| Name | Position/Title | Rate | Adjusted Rate | No. of Hours | Amount Owed |
|------|----------------|------|---------------|--------------|-------------|
| J. Harras | Associate | $265/hr | $225/hr | 14.8 | $3,330 |
| J. Harras | Partner | $350/hr | $300/hr | 3.9 | $1,170 |
| Various | Legal Assistants | $115/hr | $90/hr | 12.6 | $1,134 |
| **Total:** | | | | 31.3 | $5,634 |

F.    Costs

The Funds seek $478.38 in costs.  (Harras Aff. ¶ 21; Invoice of Professional

Services).  Specifically, Plaintiffs request $400 for the filing fee paid to the Clerk of the

Court for the Eastern District of New York, service of process fees of $75, postage fees of

$0.50, Courtlink research fees of $0.80, and LexisNexis fees in the amount of $2.08.

(Invoice of Professional Services at 6–7).  ERISA provides that "an award of reasonable

costs is mandatory in an action where the plaintiff recovers delinquent contributions."

*Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-0814, 2012 WL 1077796, at *12 (E.D.N.Y.

Mar. 6, 2012), *report and recommendation adopted*, 2012 WL 1078470 (Mar. 30,

2012); *see also* 29 U.S.C. § 1132(g)(2)(D).  Ordinarily, plaintiffs may recover "[c]osts

relating to filing fees, process servers, postage, and photocopying."  *Teamsters Loc. 814

Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y.

2008).

Filing fees are recoverable without supporting documentation if verified by the

docket.  *See Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at

*2 (E.D.N.Y. Mar. 7, 2013); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL

9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (stating that the filing fee is "a fact of which

the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL

1906902 (May 9, 2017).  The docket sheet indicates the $400 filing fee was paid. (Dkt.

No. 1).  Therefore, the filing fee should be awarded.

Process server fees are also recoverable, but they must be supported by

documentation.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL

5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be

awarded process server fees absent supporting documentation and noting that "failure

to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714 (Oct. 18, 2017); *Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016) (recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058 (Sept. 19, 2016).  The affidavit of service submitted with the motion for default judgment reflects that the cost to serve AM Tile with the Complaint was $0.00.  (Aff. of Service, attached as Ex. B to Harras Aff., Dkt. No. 16).  The Court thus recommends that the Trustees' request for an award of service costs be denied.[8]

Plaintiff's counsel has provided an itemized list of the legal research fees and postage expenses, which total $3.38.  (Invoice of Professional Services at 7).  The Court finds these costs reasonable.

Thus, the Court respectfully recommends an award of costs in the amount of $403.38.

G.    Post-Judgment Interest

The Trustees seek an award of post-judgment interest at the statutory rate.  The Second Circuit has recognized that "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)).  "The post-judgment interest rate in an ERISA action is tied 'to the weekly average 1-year constant maturity Treasury yield . . . for the week preceding the date of judgment.'"  *Genworth Life & Health Ins. Co. v.*

---

[8] While the Invoice of  Professional Services (at 7) lists a service of process fee is $75, there is no reason to accord that document (which appears to be a tally sheet that incorporates information from original receipts) any weight in light of the underlying service of process affidavit which indicates that no charge was imposed for service.

*Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008) (alteration in original) (quoting 28 U.S.C. § 1961(a)).  The Court therefore recommends post-judgment interest be granted on the total award, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters final judgment until the date of payment.

<u>CONCLUSION</u>

For the reasons stated, the Court respectfully recommends that a default judgment be entered against AM Tile, ordering AM Tile to pay the Trustees:

- $98,118.11 in delinquent contributions;

- $19,085.55 in liquidated damages;

- Interest on delinquent contributions calculated by the Clerk of Court from June 30, 2016, through the date of entry of final judgment at a rate of $28.88 per day;

- $4,390.40 in audit fees;

- $5,634.00 in attorney's fees;

- $403.38 in costs; and

- Post-judgment interest in an amount to be calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961(a).

That is, the Court recommends a total award of $127,631.44, plus interest of $28.88 per day from June 30, 2016, through the date of entry of judgment, as well as post-judgment interest accruing at the statutory rate.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

The Trustees are directed to serve a copy of this Report and Recommendation on AM Tile and file proof of such service on the record.

SO ORDERED.

*/s/ Sanket J. Bulsara* September 23, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York